IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEON WILLIAMS, JR. | § | |
| | § | |
| V. | § | A-18-CV-593 LY |
| | § | |
| SETON FAMILY OF HOSPITALS, | § | |
| DOING BUSINESS AS DELL SETON | § | |
| MEDICAL CENTER AT THE | § | |
| UNIVERSITY OF TEXAS, AND JASON | § | |
| A. BRADLEY, M.D. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Seton Family of Hospitals, Doing Business as Dell Seton Medical Center at the University of Texas's Motion to Dismiss for Failure to State a Claim (Dkt. No. 8);[1] Defendant Seton's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (Dkt. No. 19); Defendant Seton's Motion to Strike Plaintiff's Reply (Dkt. No. 18);[2] Defendant Jason A. Bradley, M.D.'s Motion to Dismiss for Failure to State a Claim (Dkt. No. 25); and the various Response and Reply briefs. The District Judge referred the above-motions to the undersigned for

---

[1]After Seton filed its first Motion to Dismiss, Plaintiff filed his First Amended Complaint. Seton has also filed a Motion to Dismiss Plaintiff's First Amended Complaint. In light of these filings, the Court **RECOMMENDS** that Seton's First Motion to Dismiss (Dkt. No. 8) is **DISMISSED** as **MOOT**.

[2]Seton moves to strike Plaintiff's Supplemental Response to Defendant's Motion to Dismiss because Plaintiff failed to seek leave of Court to file his Sur-Reply in violation of Local Rule CV-7(f)(1). Seton is correct that Plaintiff has violated Local Rule CV-7(f)(1). Accordingly, the Court **HEREBY STRIKES** Plaintiff's Supplemental Response to Defendant's Motion to Dismiss (Dkt. No. 15).

report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I. GENERAL BACKGROUND

Plaintiff Leon Williams, Jr. alleges that at 11:16 p.m. on April 18, 2018, he was brought to the emergency department of Dell Seton Medical Center at The University of Texas ("Hospital") in an ambulance because he was suffering from a severe closed head injury and dangerously high blood pressure. Williams alleges that the Hospital had actual knowledge that his blood pressure was dangerously high, that he had suffered blunt trauma to his head that caused him to sustain loss of consciousness, that he was suffering from numbness in his left side, that his speech pattern had become altered, that he was suffering from weakness in his left side, and that an MRI showed "FLAIR and PRES syndrome." Dkt. No. 9 at ¶ 10.³ Williams alleges that the Hospital failed to provide him with adequate treatment. Instead, Williams alleges that the Hospital ordered security personnel to "dump" him off at the bus stop in front of the Hospital at 6:43 a.m. on April 19, 2018.

Although Williams acknowledges that the Hospital prescribed him medication to treat his high blood pressure and administered an MRI, he contends that he never received the medication. Williams alleges that on August 20, 2018, a neuro-radiologist reviewed his MRI (that had been performed on Williams during his emergency visit) and determined that he needed to be brought back to the Hospital for treatment. Williams contends that the Hospital was not able to reach him,

---

³The First Amended Complaint does not define the meanings of the acronyms "FLAIR" and "PRES." However, Williams "PRES" appears to be referring to posterior reversible encephalopathy syndrome, a syndrome characterized by headache, confusion, seizures and visual loss. https://en.wikipedia.org/wiki/Posterior_reversible_encephalopathy_syndrome. "FLAIR" appears to be referring to fluid-attenuated inversion recovery, an MRI sequence with an inversion recovery set to null fluids. https://en.wikipedia.org/wiki/Fluid-attenuated_inversion_recovery.

however, because the Hospital never asked for his contact information. Williams alleges that because the Hospital failed to provide him with further medical treatment, he suffered "a severe and permanent neurological impairment." Dkt. No. 9 at ¶ 15. Williams claims that "[s]uch further medical examination and treatment that would have been provided to every other such patient with the same or substantially similar constellation of signs, symptoms, and finding would have been to admit such patient into the hospital in the care of a neurologist and to provide such a patient with medications to lower blood pressure and to provide treatment for PRES syndrome." *Id.* at ¶14. Williams contends that if the Hospital had properly treated him, "the transient neurological signs (left sided numbness, left sided weakness and altered speech) would have been resolved and would not have caused Plaintiff to suffer severe permanent neurological impairment." *Id.* at ¶15. Williams contends that the Hospital failed to treat him because he was a poor, African-American person who did not have any health insurance.

Williams alleges that he remained at the bus stop for two days "vomiting and urinating on himself due to his condition and being unable to walk." *Id.* at ¶18. After two days, on April 21, 2018, Williams alleges that a good Samaritan took him back to the Hospital where he remained until April 30, 2018. Williams alleges that he was diagnosed with dangerously high blood pressure and PRES syndrome and was finally provided with treatment. Williams claims that the treatment was too late, however, and that the delay in treatment caused him to become paralyzed and neurologically impaired. He contends that if he had been properly treated at the Hospital when he first arrived on August 18, 2108, he would not have suffered such injuries.

Williams filed this lawsuit on July 16, 2018, against Seton Family of Hospitals d/b/a Dell Seton Medical Center at the University of Texas's ("Seton") and Jason A. Bradley, M.D., the

emergency medicine physician who initially treated Williams. Williams alleges that Seton violated the Emergency Medical Treatment and Labor Act ("EMTLA," 42 U.S.C. § 1395dd(b)(1)) by (1) failing to appropriately screen him when he arrived at the Hospital to determine whether he was suffering an emergency medical condition and (2) failing to timely stabilize or transfer him to another medical facility. In the alternative, Williams alleges that Seton committed malice and gross negligence in its treatment of Plaintiff. Williams' First Amended Complaint also alleges that Dr. Bradley committed malice and gross negligence in his treatment of Williams.

Seton has now filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that Williams' EMTALA's failure to screen claim and malice and gross negligence claims all fail to state a claim. Dr. Bradley similarly has filed a Rule 12(b)(6) motion to dismiss the malice and gross negligence claims.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint,

4

any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. ANALYSIS

Seton argues that Williams' failure to screen claim under EMTALA fails to state a claim because his allegations in his First Amended Complaint show that he was screened and treated for his condition. Seton further argues that Williams' screening claim is really a medical negligence claim disguised as a failure to screen claim which is outside the parameters of EMTALA. Alternatively, Seton argues that Williams' EMTALA claim should be dismissed because he has failed to assert any non-conclusory allegations that he was treated differently from other patients evincing similar symptoms.[4] Seton and Dr. Bradley further argue that Williams' malice and negligence claims fail as a matter of law.

**A.    EMTALA Medical Screening Claim**

Congress enacted EMTALA to prevent "patient dumping," which is the practice of refusing to treat patients who are unable to pay. *Marshall on Behalf of Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). The EMTALA provides, in relevant part, the following:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for *an appropriate medical screening examination* within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency

---

[4]Seton has not moved to dismiss Williams' failure to stabilize claim under EMTALA. Accordingly, the Court need not address the stabilization claim.

5

department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C.A. § 1395dd(a) (emphasis added). Although "an appropriate medical screening examination" is not defined by EMTALA, most courts that have interpreted the phrase have defined it as "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms." *Marshall*, 134 F.3d at 323. The Act defines an "emergency medical condition" as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in-
>
> > (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
> >
> > (ii) serious impairment to bodily functions, or
> >
> > (iii) serious dysfunction of any bodily organ or part...

42 U.S.C. § 1395dd(e)(1). If the hospital determines that the individual has an "emergency medical condition," then the hospital must make provision:

> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility....

42 U.S.C. § 1395dd(b)(1).

Williams alleges that Seton failed to provide him with an appropriate medical screening examination when he arrived at the Hospital to determine whether he was suffering from an emergency medical condition as required by § 1395dd(b)(1)(A) of EMTALA. As noted, an

appropriate medical screening examination is "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms." *Marshall*, 134 F.3d at 323; *see also, Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994) ("[T]his language only requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient."). The plaintiff has the burden of demonstrating that the hospital failed to provide an appropriate examination under EMTALA. *Marshall*, 134 F.3d at 323-24. An "inappropriate screening examination is one that has a disparate impact on the plaintiff." *Id.* (citing *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1138 (8th Cir.1996)). A plaintiff can prove disparate impact "by showing that the hospital did not follow its own standard screening procedures or by pointing to differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same hospital." *Id.* A patient can also prove that an EMTALA violation occurred by showing "that the hospital provided such a cursory screening that it amounted to no screening at all." *Id.*

It is important to emphasize that "Congress did not intend EMTALA to be utilized as a federal malpractice statute." *Fewins v. Granbury Hosp. Corp.*, 662 F. App'x 327, 330 (5th Cir. 2016) (citing *Marshall*, 134 F.3d at 322). Accordingly, "an EMTALA 'appropriate medical screening examination' is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms." *Marshall,* 134 F.3d at 322. Thus, if the patient is "provided an appropriate medical screening examination," the hospital "is not liable under EMTALA even if the physician who performed the examination made a misdiagnosis that could subject him and his employer to liability in a medical malpractice action brought under state law." *Id.*

In the instant case, Williams' own allegations acknowledge that he received a medical screening when he was admitted to the emergency room. Williams is not alleging that he did not receive a medical screening, but rather that he did not receive the appropriate treatment he required. Although Williams acknowledges that Seton evaluated and treated him during the six hours he was at the Hospital by performing an MRI and prescribing him medication for his high blood pressure, he contends that Seton's medical screening examination was not appropriate because Seton failed to have him evaluated by a neurologist. Complaining that he was not seen by a neurologist may support a medical malpractice claim or possibly his failure to stabilize claim but is not a viable medical screening claim under EMTALA. As the Fifth Circuit has stated, "a treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." *Marshall*, 134 F.3d at 323. *See also, Aguocha-Ohakweh v. Harris Cty. Hosp. Dist.*, 731 F. App'x 312, 316 (5th Cir. 2018) (holding that EMTALA screening claim failed where complaint focused on the hospital's treatment-related decision to complete a bronchoscopy rather than immediately proceed with chemotherapy since such claims are medical malpractice claims); *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) ("A hospital's liability under EMTALA is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care."); *Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 142 (4th Cir. 1996) (EMTALA "does not impose any duty on a hospital requiring that the screening result in a correct diagnosis. Instead, questions related to. . .diagnosis remain the exclusive province of local negligence and malpractice law."); *Hoffman v. Tonnemacher*, 425 F. Supp. 2d 1120, 1135 (E.D. Cal. 2006) ("A mere faulty or

8

negligent screening or a misdiagnosis is not a violation of EMTALA."). Because Williams is only complaining about treatment-related decisions, his EMTALA medical screening claim fails as a matter of law.

**B.      Malice and Gross Negligence Claims under Texas Law**

Williams' First Amended Complaint further alleges that Seton and Dr. Bradley are guilty of malice and gross negligence. Defendants argue that both claims fail to state a claim for relief under Texas law and must be dismissed. Defendants argue that Williams' malice claim must be dismissed because Texas does not have a specific cause of action for "malice."[5] *Arana v. Figueroa*, 559 S.W.3d 623, 634 (Tex. App. 2018, no pet.). The Court agrees and will recommend that this claim be dismissed.

Defendants also argues that Williams' allegation of gross-negligence fails to state a claim for relief under Texas law. Under Texas law, to prevail on a medical negligence cause of action, a plaintiff must prove the following four elements: "(1) a duty by the physician/nurse/hospital to act according to applicable standards of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury." *Montoya v. Las Palmas Med. Ctr.*, 2015 WL 12551109, at *7 (W.D. Tex. Aug. 6, 2015) (quoting *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex. App. 1997, pet. denied)). "As a general rule, expert testimony is required to establish the governing standard of care and to determine whether the standard has been breached." *Id.* It is also generally "necessary to establish causation as to medical

---

[5] Malice is an element when determining exemplary damages. Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001(7), 41.003.

9

conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007) (collecting cases).

The Court agrees that Williams' one-sentence allegation of gross-negligence fails to state a claim for relief under Texas law. However, instead of dismissing this claim at this time, the Court recommends that the District Court grant Williams permission to file a Second Amended Complaint to re-plead his gross negligence claim in more specific terms. The Court recommends that Williams only be permitted to re-plead his gross negligence claim and not be permitted to add any additional claims.

**C.     Conclusion**

Based upon the foregoing, the Court finds that Defendants' Motions to Dismiss should be granted in part and denied in part. The Court finds that Williams' failure to screen claim under EMTALA and malice claim should be dismissed, but that Williams be permitted to re-plead his gross negligence claim. Because Defendants have not moved to dismiss his failure to stabilize claim under EMTALA, that claim remains pending as well.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DISMISS** as **MOOT** Seton's First Motion to Dismiss (Dkt. No. 8).[6] The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Seton's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim (Dkt. No. 19). The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss Williams' failure to screen claim under EMTALA and his malice claim, but **DENY** the Motion to Dismiss gross

---

[6]See footnote No. 1.

negligence claim and permit Williams to re-plead that claim. The Court **FURTHER RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Jason A. Bradley, M.D.'s Motion to Dismiss for Failure to State a Claim (Dkt. No. 25). The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss Williams' malice claim, but **DENY** the Motion with regard to the gross negligence claim and permit Williams to re-plead that claim.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 1st day of February, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE